# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIO SEGURA-SANCHEZ, | : | CIVIL NO. 4:10-CV-461 |
| Petitioner, | : | (Judge McClure) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN T.R. SNIEZEK, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

In this instance the petitioner, a federal prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Having conducted this review, we find no error in that calculation, which properly allocates time previously served by the petitioner between his various state and federal sentences. Therefore we recommend that this petition for writ of habeas corpus be denied.

### II. Statement of Facts and of the Case

In this case the interplay of state and federal sentences which forms the basis for this sentence credit calculation began May 15, 2007, when the petitioner, Claudio Segura-Sanchez was arrested by New York State authorities and was charged with reckless endangerment in the second degree, coercion in the second degree, and

1

menacing in the third degree. (Doc. 6-1, Declaration of Cynthia C. Cafalj) ¶ 5; Excerpts of Pre-Sentence Report, 3.) Sanchez, an undocumented, illegal alien, was held by state officials on this charge and remained in state custody until August 7, 2007, when he was temporarily taken from state custody and brought to federal court, pursuant to a writ of habeas corpus *ad prosequendum* to answer federal charges for illegal re-entry of an aggravated felon following deportation in the United States District Court for the Southern District of New York. (Doc. 6-1,Cafalj Decl. ¶ 6; United States Marshals Service Prisoner Tracking System Individual Custody and Detention Report, Attach. 2 at 2, § III.)

Sanchez was held temporarily on this writ until October 3, 2008, when he was sentenced in federal court on this illegal re-entry charge to a term of imprisonment of 30 months. (Doc. 6-1, Cafalj Decl. ¶ 7; Judgment in a Criminal Case 06CR00785 Attach. 3 at 1-2.) As Sanchez himself acknowledges, at the time that this federal sentence was imposed, the sentencing judge notified him that he would receive no credit from the Bureau of Prisons towards his federal sentence for the time he spent in custody from August 2007 through October 2008, approximately 14 months. (Doc. 7) The federal sentencing judge did subsequently notify the Bureau of Prisons, however, that she had reduced Sanchez's sentence by six months in consideration of this period of pre-trial detention on state charges. (Doc. 6-1, Attachment 6.) Thus, the

circumstances cited by Sanchez in this petition were taken into account by the sentencing judge in his federal case when imposing sentence. (Id.)

Sanchez was then returned to the primary custody of New York State authorities. (Doc. 6-1, Cafalj Decl. ¶ 8; United States Marshals Service Prisoner Tracking System Individual Custody and Detention Report Attach. 2 at 2, § III.) Upon his return, Sanchez then resolved the state case which initially led to his incarceration on December 15, 2008, when he was sentenced by the Bronx County Supreme Court, New York, to time served for attempted coercion in the first degree. (Doc. 6-1, Cafalj Decl. ¶ 9; Certificate of Disposition Indictment Attach. 4 at 1.) On December 30, 2008, Sanchez was released from his state sentence to federal custody for service of his federal sentence. (Doc. 6-1, Cafalj Decl. ¶ 10; United States Marshals Service Prisoner Tracking System Individual Custody and Detention Report Attach. 2 at 2, § III.) As part of the sentence calculation process in this case, on March 31, 2010, the New York Department of Correctional Services, Office of Sentencing Review confirmed that Sanchez was sentenced by New York State on December 15, 2008, to time served, which included all time he spent in custody beginning May 15, 2007, the date he was arrested on the state charges, through December 15, 2008. (Doc. 6-1, Memorandum for File dated April 6, 2010 Attach. 5 at 1.) Thus, according to New York officials, the state sentence fully credited Sanchez for the entire time period he

had been in the primary custody of the state, and included the 14 month period between August 2007 and October 2008 when Sanchez had been temporarily transferred to federal court on a writ. Accordingly, Sanchez's 30-month federal sentence has been computed as commencing on December 15, 2008, the date he was sentenced to time served by the State of New York. (Doc. 6-1,. ¶ 13; BOP SENTRY Report, Sentence Monitoring Computation Data Attach. 7 at 3.) Sanchez's projected release date is February 17, 2011, via good conduct time release.

Dissatisfied with this sentence calculation, Sanchez filed this petition for writ of habeas corpus. (Doc. 1.) In his habeas corpus petition, Sanchez advanced a different sentencing credit computation, arguing that the Bureau of Prisons ("BOP") incorrectly computed his federal sentence by not providing him federal credit for the entire time he spent in state custody prior to his federal sentencing. Specifically Sanchez sought credit against his federal sentence for the 14 months from August 2007 through October 2008 that he spent in state custody, and on a federal writ, awaiting sentencing. Sanchez sought this federal jail time credit even though he has already received credit for this period of incarceration against his state sentence.

This petition has been briefed by the parties (Docs. 1, 6, 7, 10) and is now ripe for resolution. For the reasons set forth below, it is recommended that the petition be denied, since the Bureau of Prisons has accurately calculated the sentence credit that

Sanchez is entitled to receive on the facts of this case in accordance with the law which governs such credits.

### III. Discussion

#### A. Sanchez's Petition Fails on its Merits.

Sanchez's petition invites this court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who has served both state and federal sentences. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed: " 'Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F.Supp. 618, 621 (M.D.Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a

specific statutory and regulatory system for calculating credit for time served by federal prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

Chambers v. Holland, supra, 920 F.Supp. at 621.

However, as the Supreme Court has recognized, United States v. Wilson, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two questions which lie at the heart of Sanchez's habeas petition: first, when did Sanchez's sentence commence; and, second, to what extent may Sanchez receive credit for any time already spent in custody?

With respect to the first of these questions regarding when this federal sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990). As a result, a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir. 2009).

This basic legal tenet is fatal to Sanchez's claim that he should now receive credit against his federal sentence for the entire time from August 2007 through October 2008 when he was in state custody and was awaiting sentencing in federal court. Since, "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)," Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir. 2009), it is not possible

7

to accept Sanchez's invitation and run his sentence from a date 14 months prior to the day it was imposed.

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent may the defendant receive credit for any time already spent in custody against his federal sentence. In this regard, we begin with the proposition that Sanchez may not receive: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F.Appx. at 593.

It is also clear beyond any dispute that a defendant, like Sanchez, who is in state custody but is taken temporarily from state custody to federal court pursuant to a writ of habeas corpus *ad prosequendum* does not come under federal "custody" for purposes of calculating prison sentence credit under § 3585. Indeed, courts have repeatedly examined this question, and consistently held that temporarily holding a prisoner on a writ does not equate to custody for purposes of calculating sentence credit. See, e.g., Rashid v. Quintana, No. 09-4079, 2010 WL 1141386 (3d. Cir. March 25, 2010); Taylor v. Holt, supra; United States v. Hayes, 535 F.3d 907 (8th Cir. 2008); D'Amario v. Zenk, 131 F.App'x 381 (3d Cir. 2005); Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992); Chambers v. Holland, supra; Miller v. United States, 826 F.Supp. 636

(N.D.N.Y. 1993); United States v. Smith, 812 F.Supp. 368 (E.D.N.Y. 1993); United States v. Killion, 788 F.Supp. 1165 (D.Kan. 1992). Accordingly, these cases uniformly reject efforts by federal prisoners to secure jail time credit for periods in which they were held temporarily in federal court on a federal writ when that period of time has also been credited against their state sentences. Id. The rationale for this rule, which enjoys broad acceptance by the courts, can be simply stated:

> A federal sentence does not begin to run, . . ., when a defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); Hernandez v. United States Attorney General, 689 F.2d 915, 918-19 (10th Cir.1982); Roche v. Sizer, 675 F.2d 507, 509-10 (2d Cir.1982); see also Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir.1991) (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody); Salley, 786 F.2d at 547-48 (defendant produced and sentenced in federal court via writ of habeas corpus ad prosequendum did not begin to serve consecutive federal sentence until delivered into federal custody). This rule derives from the fact that the federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities. Whalen, 962 F.2d at 361 n. 3; In re Liberatore, 574 F.2d 78, 79 (2d Cir.1978); Crawford v. Jackson, 589 F.2d 693, 695 (D.C.Cir.1978).

United States v. Smith, 812 F.Supp. 368, 370-71 (E.D.N.Y. 1993).

These basic legal tenets control here, and compel denial of this petition for writ of habeas corpus. In this case it is undisputed that Sanchez commenced his sentence for this federal immigration offense on December 15, 2008, the date he was sentenced

9

to time served by the State of New York, and released to federal custody to commence service of his federal sentence. At the time that he was transferred to federal custody to commence service of this sentence, Sanchez had already received full credit from state officials against his New York state sentence for all of the time he spent in custody beginning May 15, 2007, the date he was arrested on the state charges, through December 15, 2008. (Doc. 6-1, Memorandum for File dated April 6, 2010 Attach. 5 at 1.) Thus, according to New York officials, the state sentence credited Sanchez for the entire time period he had been in the primary custody of the state, and included the period when Sanchez had been temporarily transferred to federal court on a writ. Since Sanchez had expressly received credit for this time in prison against his state sentence, he was not entitled to further credit for this period of imprisonment against his federal jail sentence. Indeed, it is well settled that Sanchez may not receive such: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F.Appx. at 593.

Finally, Sanchez himself admits in his pleadings that, at the time that this federal sentence was imposed in October 2008, the sentencing judge specifically notified him that he would receive no credit from the Bureau of Prisons towards his federal sentence for the time he spent in custody, approximately 14 months. (Doc. 7) Even

though the federal judge placed Sanchez on notice that he would receive no such credit under §3585, that federal sentencing judge has advised the Bureau of Prisons that she had reduced Sanchez's federal sentence by six months in consideration of this period of pre-trial detention on state charges. (Doc. 6-1, Attachment 6.) Thus, the circumstances cited by Sanchez in this petition were actually taken into account by the sentencing judge in his federal case when she imposed sentence. (Id.)

In sum, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of Sanchez's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law. Consistent with case law, it declined to credit Sanchez for time that was already credited against his separate state sentence, but ensured that Sanchez received full credit against his federal sentence for jail time which he served that had not been credited against another sentence. Thus, this federal jail time credit calculation, provided Sanchez with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for

his detention time." Id.

Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Sanchez all the credit he is entitled to receive, Sanchez's petition for writ of habeas corpus should be denied.

IV.     **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of October, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge